UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| IVAN LYDELL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No: 15-24-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM** |
| ACCENTURE FEDERAL SERVICES | ) | **OPINION** |
| and OLIVIA SMITH, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

*** *** *** ***

Ivan Brown was employed by Accenture Federal Services (AFS) for several months before his allegedly wrongful discharge.  Subsequently, Brown brought suit against AFS and against AFS employee Olivia Smith in her individual and official capacity, alleging racial and gender discrimination in violation of Chapter 344 of the Kentucky Civil Rights Act ("KCRA"), Ky.Rev.Stat. § 344.010 *et seq*., as well as common law claims for promissory estoppel, negligent hiring and supervision, and "failure to protect."  Presently before the Court is the Defendants' Motion to Dismiss [R. 15], which, for the reasons set forth below, will be GRANTED.

**I**

**A**

Given the present context, the factual summary that follows is taken from the complaint and construed in favor of the plaintiff.  *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (citation omitted).  Plaintiff Ivan Lydell Brown, an African-American male, applied for a position as a Federal Substance Abuse Prevention Coordinator (PC) with Defendant AFS, which is a consulting firm for various federal agencies and organizations. [R. 14, ¶¶ 13-14; R. 15-1 at

2.]  The job description for this position indicated that the PC would be stationed at the Boone National Guard Center in Frankfort, Kentucky, and would play a crucial role in implementing an initiative for substance abuse services (SASI), ensuring that soldiers with substance abuse issues obtained needed assistance, and tracking and maintaining data on soldiers participating in various SASI programs.  [R. 14, ¶ 16.]  The job description also stated that "the ability to obtain military security clearance may be necessary for the position," although top secret clearance was not necessary to perform the position's essential functions.  [*Id*., ¶ 17.]

Brown had an initial telephone interview with AFS recruiter Kathy Peterson on January 13, 2014, during which Brown disclosed certain details about his criminal history record, such as his conviction dates, when he was released from probation, and when his civil rights were reinstated.  [*Id*., ¶ 24.]  During the interview, Ms. Peterson informed Brown that his criminal history "would not be a barrier" to his employment with AFS, and in fact "would be beneficial" to the position for which he was applying.  [*Id*., ¶ 26.]  Also on January 13, 2014, Brown completed the EEO affirmative action information as requested by Ms. Peterson.  [*Id*., ¶ 22.]  Subsequently, Brown was contacted by Ms. Patricia Bocanegra, a recruiting administrator in the AFS Human Resources Center, who informed Brown about beginning his background check.  [*Id*., ¶ 27.]  Brown then provided the necessary information to HireRight Customer Support, the company AFS uses to conduct background checks on prospective employees.  [*Id*., ¶¶ 28-29.]  According to Brown, HireRight initially told him the check would only include information from the last ten years, but later required him to fill out an addendum concerning his criminal history from outside the ten-year period as well.  [*Id*., ¶¶ 29-31.]

After two more interviews, AFS sent Brown an e-mail on January 23, 2014, offering him the PC position, which he accepted.  [*Id*., ¶ 36.]  A few days later, on January 27, Ms. Peterson

called Brown to let him know that his background check was taking longer than expected, and that his official start date would be February 10, 2014. [*Id.*, ¶ 38.] Also on January 27, Ms. Bocanegra informed Brown that there were "a few minor discrepancies" with his employment information, and Brown promptly uploaded the requested employment information so HireRight could finish his background check. [*Id.*, ¶¶ 40-43.] On February 5, 2014, Brown received a congratulatory e-mail from AFS concerning his acceptance of the PC position and confirming his start date. [*Id.*, ¶¶ 44-47.]

Ultimately, Brown officially began his employment with AFS on February 10, 2014, working under Unit Commander Major Harvey. [*Id.,* ¶¶ 16, 21, 44-48.] Upon his employment, Brown was given "temporary access" to Sharepoint, which is a military program that allows state-level substance abuse program coordinators to collaborate with each other. [*Id.*, ¶¶ 18-20, 68.] According to Brown, top-secret clearance was ordinarily necessary to access Sharepoint, but using Sharepoint was not one of the responsibilities listed in his job description. [*Id.*, ¶¶ 18-19.] Brown maintains he was never asked for further information regarding his criminal background during the hiring process, and that he was "continually assured" by Ms. Peterson and Ms. Bocanegra that his prior criminal history would not prevent his employment. [*Id.*, ¶ 49.]

After beginning his employment with AFS, Brown had to undergo a separate military background check through the Personal Security Investigation Center of Excellence (PSI-CoE), which is a government entity that conducts background checks for the United States Army. [R. 15-1 at 3; R. 14, ¶ 53.] This PSI-CoE check was independent of the check conducted by HireRight, and required Brown to fill out "Standard Form 85 – Questionnaire for Non-Sensitive Positions" (SF-85), which is created by the U.S. Office of Personnel Management. [R. 15-1 at 3; R. 15-2; R. 14, ¶¶ 53, 74.] The SF-85 states at the top that it is used by the United States

government to conduct background investigations, and that "[i]nformation from this form is used primarily as the basis for this investigation. Complete this form only after a conditional offer of employment has been made."[1]  [R. 15-2 at 2.]  Throughout April 2014, Brown communicated several times with PSI-CoE regarding their various needs for clarification and further background information.  [R. 14, ¶¶ 50-51.]  Brown ultimately sent his final revisions to PSI-CoE on April 21, 2014.  [*Id.*, ¶ 52.]  According to Brown, the PSI-CoE military background check required only a five-year criminal history record, and a felony conviction alone would be insufficient to disqualify someone from holding a security clearance.  [*Id.*, ¶¶ 74-76.]

Initially, Brown's employment at AFS appeared to be going well.  On May 2, 2014, Brown met with Major Harvey to review Brown's work since his start date, and Harvey stated he was "pleased" with Brown's performance.  [*Id.*, ¶¶ 54-55.]  Later that same day, however, Brown was asked to refrain from participating in a weekly conference call and was then informed by Defendant Olivia Smith that "he had 'failed' his background check and did not need to report back to the worksite."  [*Id.*, ¶¶ 56-57.]  Around an hour and a half later, Brown was informed by another AFS employee, Rachel Lovejoy, that he had failed the background check "due to his criminal record."  [*Id.*, ¶ 58.]  On May 8, 2014, PSI-CoE requested additional information from Brown, but later on the same day sent another e-mail stating that Brown's background investigation was no longer necessary.  [*Id.*, ¶¶ 59-62.]  Brown inquired about this email to Major Harvey, who informed Brown he did not know why PSI-CoE was contacting him or why Brown was being terminated from his postition with AFS.  [*Id.*, ¶¶ 61-62.]

On June 2, 2014, Brown had a final discussion with Ms. Lovejoy regarding his

---

[1] The Court notes that the SF-85 form is a public record referenced in Brown's amended complaint, and therefore may be properly considered without converting the Defendants' motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *In re Omnicare, Inc. Securities Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

employment with AFS.  Lovejoy gave Brown a "transition" document and asked him to sign and date it right away, even though he had twenty-one days to do so.  According to Brown, the "transition" document would release AFS "from all liability for all forms of discrimination and other causes of action."  [*Id.*, ¶¶ 64-66.]  Brown further claims that at some point on that same day, he logged in to his work computer and viewed a monthly status report written by Barbara Conley, a Caucasian female, who was an Alcohol and Drug Control Officer and a "director supervisor" of Brown's.  Ms. Conley's status report indicated that her background investigation application had been cancelled.  Ms. Conley and Mr. Brown had applied for their military clearances on the same day.  [*Id.*, ¶¶ 67-73.]  Brown's complaint indicates that on June 3, 2014, Conley's status report was revised to omit mention of the background investigation cancellation, and that when AFS learned Brown had seen the report, AFS "immediately removed [Brown's] access to its computer network and the email account."  [*Id.*, ¶¶ 72-73.]

Brown's amended complaint alleges that Olivia Smith and Rachel Lovejoy must have lied to him when they told him he was fired due to failing a background check, because PSI-CoE contacted Brown requesting more information on the same day he was told he had failed the check.[2]  [*Id.*, ¶¶ 78-79.]  Because he was given positive performance reviews from Major Harvey, and because AFS employees repeatedly assured Brown his criminal record would not be a barrier to his employment, Brown alleges there was no legitimate reason for AFS to terminate him and that AFS must have done so "for discriminatory reasons."  [*Id.*, ¶¶ 80-82.]  Brown therefore claims AFS discriminated against him because of his race and gender in violation of KRS § 344, and his amended complaint also seeks relief based on claims of promissory estoppel,

---

[2] Further, Brown maintains that if he truly had failed a background check, he would have received a letter stating the reasons and including an option to appeal or apply for a waiver, which he did not receive.  [R. 14, ¶¶ 83-86.]

negligent hiring, failure to protect, and denial of his due process rights.  [*Id.* at 10-15.]  Both Defendants – AFS and Olivia Smith – move to dismiss these claims.

## B

Defendants properly removed this action from Franklin Circuit Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  The Court maintains diversity jurisdiction over this case because AFS and its members and affiliates are citizens of Delaware, and Olivia Smith is a citizen of Virginia[3] for purposes of 28 U.S.C. § 1332, while Brown is a citizen of Kentucky; and the amount in controversy, which includes actual and compensatory damages as well as punitive damages and attorney fees, easily exceeds $75,000.

Defendants first moved to dismiss the complaint in May 2015, and Brown subsequently moved for leave to amend his complaint.  The Court granted permission to file an amended complaint [R. 13], which Defendants now move to dismiss.  [R. 15.]  In Brown's response brief, he concedes many of Defendants' arguments, ultimately agreeing to the dismissal of Counts III, IV, V, and VII of his amended complaint.  [R. 18 at 1.]  Accordingly, the only remaining claims before the Court are Counts 1 and VI for racial and gender discrimination under Ky. Rev. St. §344, and the related common law claim in Count II for promissory estoppel.

## II

## A

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In making such a motion, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing

---

[3] Brown's initial complaint alleges that Smith is a resident of Kentucky, but Defendants' notice of removal states that Smith is a resident of Virginia, and Brown nowhere presents evidence to the contrary.  [*See* R. 1-4.]

*Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). Federal Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to survive a motion to dismiss, the complaint "must contain either direct or inferential allegations" establishing each material element required for recovery under some actionable legal theory. *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal citation and quotation marks omitted).

When reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *DirecTV, Inc.*, 487 F.3d at 476 (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (citation omitted). Moreover, as is now well known, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the facts that are pled must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *DirecTV, Inc.*, 487 F.3d at 476 (citing *Twombly*, 550 U.S. at 556). Thus, the plaintiff must at least "provide the grounds of his entitlement to relief, [which] requires more than labels and conclusions. . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

When ruling on a Rule 12(b)(6) motion, a district court generally may not consider

7

matters presented outside the pleadings unless it converts the motion into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012). The district court, however, also has the discretion to ignore such evidence and resolve the motion solely on the basis of the pleadings. *Heinrich*, 668 F.3d at 405; *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 502-03 (6th Cir. 2006) (collecting cases). Certain matters beyond the allegations in the complaint such as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citations and internal quotation marks omitted). Additionally, the Sixth Circuit has held that when a *defendant* attaches undisputed documents to a motion to dismiss, they "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citations and internal quotation marks omitted).

Here, Brown did not attach anything to his complaint, but instead attached a number of exhibits to his brief in response to Defendants' motion to dismiss. There is no indication that these exhibits are a matter of public record, nor were they otherwise made part of this Court's record, and therefore they are not properly considered by this Court under Rule 12(b)(6). Thus, given the early stage of litigation, the Court will not consider the attached exhibits.[4]

### B

At the outset, Brown's claims against Olivia Smith must be dismissed. Brown correctly points out that plaintiffs only need to allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569-70. However, even under the arguably lesser pleading standard established by *Iqbal* and *Twombly*, Brown's claims against Olivia Smith still

---

[4] The Court notes its previous reference to the SF-85 form was properly considered because it is referenced in the complaint, is central to the claim at issue, and was attached to the Defendants' motion. *See Amini*, 259 F.3d at 502.

fail because his amended complaint does not even mention Smith in the context of his factual allegations except in two places: 1) alleging that she informed him on May 2, 2014 that he had "failed" his background check and did not need to report back to work; and 2) alleging that "AFS, through Defendant Smith and Ms. Lovejoy, lied to the Plaintiff about 'failing' the background check." [R. 14, ¶ 57, ¶ 78.] Fundamentally, the complaint must provide the defendant with "fair notice" of the claims asserted against him and the grounds for those claims. *See Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 319 (2007). Brown's amended complaint, however, barely mentions Ms. Smith, and certainly does not allege any facts about her that could provide her with "fair notice" of any of his claims. *See id.*

For instance, with regard to Brown's claim for racial discrimination in Count I, he merely alleges that "AFS, through Defendant Smith, targeted Plaintiff, in part, due to his race," and "showed favoritism to Caucasian employees." [R. 14, ¶¶ 92-93.] Yet none of the alleged facts give any indication that Smith was involved in such behavior or that she treated anyone differently from Brown. "[T]ender[ing] naked assertion[s] devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 578 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Under Count VI for gender discrimination, the amended complaint never alleges that Smith herself took any adverse action against Brown at all.[5] [*Id*., ¶¶ 130-31.] Likewise, under Count II for promissory estoppel, Brown does not mention Smith, nor does he allege that Smith made or broke any promise to Brown.[6] Such bare references to Smith, apart from any clear factual allegations against her, do not even plead facts "merely consistent

---

[5] Brown asserts in his responsive brief that Smith and Lovejoy, "both women, were responsible for the decision to terminate [Brown] from his PC position," [R. 18 at 5] but nothing in the amended complaint alleges or even implies that Smith was involved in the decision to fire Brown. A complaint's insufficiency "may not be amended by the briefs in opposition to a motion to dismiss." *United States v. Medquest Assocs., Inc*., 702 F. Supp.2d 909, 918 n. 2 (M.D. Tenn. 2010) (quoting *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984)).

[6] Brown only alleges that Peterson and Bocanegra, not Smith, made assurances about his criminal history.

with" Smith's liability, let alone state sufficient factual matter supporting a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

Moreover, and perhaps even more importantly, an individual does not qualify as an employer under the KCRA and therefore cannot be held personally liable for discrimination under KRS Chapter 344.[7]  *See Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1992); *Palmer v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 882 S.W.2d 117, 119 (Ky. 1994); *see also Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012) ("An individual cannot be held personally liable for violations of Title VII."); *Akers v. Alvey*, 338 F.3d 491, 500 (6th Cir. 2003) (recognizing *Wathen v. GE* as controlling authority for the principle that Title VII does not create individual liability for individuals in supervisory positions).  Thus, Brown's claims against Olivia Smith fail as a matter of law and must be dismissed.[8]

## C

Count I of Brown's amended complaint alleges that AFS engaged in racial discrimination against him through his wrongful termination in violation of the KCRA.  In response to Defendants' motion to dismiss, Brown asserts that his amended complaint contains sufficient factual content to establish a plausible claim under a theory of disparate treatment.  [R. 18 at 4.] Section 344 of the KCRA makes it unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to

---

[7] The Court notes that individuals may be held liable under KRS § 344 for retaliation, but nothing in Brown's complaint indicates an intention to pursue a retaliation claim against Olivia Smith.  *See Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000).

[8] Brown presents no argument or legal authority to the contrary, and does not even address this concern in his responsive brief, thereby effectively conceding that his claims against Smith should be dismissed.  *See Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived).

compensation, terms, conditions, or privileges of employment, because of the individual's race, color . . . [or] sex." Ky. Rev. Stat. § 344.040(1)(a). Because the KCRA is modeled upon Title VII of the Civil Rights Act of 1964, courts use "federal Title VII standards to evaluate state race discrimination claims brought under Kentucky's Civil Rights Act." *Wilson v. Dana Corp.*, 210 F.Supp.2d 867, 877 (W.D. Ky. 2002) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000)); *see also LaPorte v. B.L. Harbert Int'l, LLC*, 2010 WL 1542500, *2 (W.D. Ky. Apr. 16, 2010) (explaining that as "a state counterpart to Title VII," KCRA chapter 344 "mirrors Title VII" and should be analyzed in the same manner); *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 821 (Ky. 1992) (noting that claims brought under KRS 344.040 should be interpreted under the same standards as federal discrimination claims brought under Title VII).[9]

In light of this framework, because Brown does not present direct evidence of discrimination, he must first allege a prima facie case under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), by pleading facts supporting the following elements: that "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Lewis v. Norfolk S. Ry. Co.*, 590 F. App'x 467, 469 (6th Cir. 2014) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)); *see also Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (applying *McDonnell Douglas* framework to racial discrimination claims).[10] As a threshold matter, it is important to clarify that the question presently before the

---

[9] The Court notes, however, that while the standards for evaluation may be the same, the KCRA provides for broader relief than Title VII by including potential claims for "damages for humiliation, personal indignity and other intangible injuries." *Mitchell v. Seaboard System Railroad*, 883 F.2d 451, 454 (6th Cir. 1989).

[10] Brown's responsive brief further clarifies that he intends to make a claim of disparate treatment rather than disparate impact, but under that analysis he still must allege the same elements – that he "belongs to a protected class, was qualified for the position, was subject to an adverse employment decision, and similarly situated

Court is only whether Brown has pled sufficient facts to make out a prima facie case.  The subsequent stages of burden-shifting under the *McDonnell-Douglas* framework, such as whether the employer had a legitimate, non-discriminatory reason for terminating him, or whether such a reason is pretextual, are not at issue at this juncture.

Concerning the prima facie case, there is no dispute that, as an African-American, Brown is a member of a protected class.  The parties also apparently agree that Brown suffered an adverse employment decision through his termination from AFS.[11]  Indeed, "[t]ermination is the quintessential adverse employment action."  *Harris v. Burger King Corp.*, 993 F.Supp.2d 677, 686 (W.D. Ky. 2014).

As for Brown's qualifications, he sufficiently alleges facts establishing this element.  In the context of making out a prima facie case, "a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (citations omitted) (emphasis added).  It is not Brown's burden at this point to prove that he met the subjective criteria for the job position or that he was as qualified as the person who eventually filled it after his termination.  *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 699-700 (Ky. Ct. App. 1991).  To survive a motion to dismiss, Brown simply needs to allege that his qualifications "are at least equivalent to the minimum objective criteria required for employment in the relevant field," an inquiry that "should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills."  *Wexler*, 317 F.3d at 575-76.

---

employees who are not members of the protected class were treated 'more favorably.'"  *Davis v. Teamsters Local Union No.* 793, 837 F.Supp.2d 646, 653 (W.D. Ky. 2011) (quoting *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010)).

[11] As Brown correctly notes, Defendants' motion to dismiss does not dispute these points, nor does their reply brief. [*See* R. 18 at 5.]

Even without considering the additional documentation attached to Brown's response brief,[12] Brown has alleged sufficient facts at this stage concerning his qualifications based on the PC job description and in light of the fact that he was offered the PC position, he was actually hired by AFS, and he held the position for several months before his termination. [R. 14, ¶¶ 16-17, 36-37, 44-49.]  *See id.*; *see Handley*, 827 S.W.2d at 700 (citing *Lynn v. Regents of the Univ. of California*, 656 F.2d 1337 (1981)).  AFS does not dispute these facts.[13]  Brown further alleges, and AFS does not deny, that his supervisor Major Harvey said he was happy with Brown's job performance, and that AFS recruiters repeatedly assured him that his criminal history would not prevent his employment. [R. 14, ¶¶ 26, 49, 58, 80.]  While AFS implies that Brown was terminated because he could not obtain a military security clearance [R. 15-1 at 9], the defendant's alleged reason for termination is not to be considered when analyzing whether the plaintiff has made out a prima facie case for discrimination.  *Wexler*, 317 F.3d at 574.  While the impact of the PSI-CoE background check may become relevant at a later stage in the burden-shifting analysis, the pleadings do not establish that the PSI-CoE clearance was necessarily required such that Brown was objectively unqualified for the PC position without it.

Brown, however, fails to allege sufficient facts concerning the fourth prong – that other similarly situated employees were not subject to the same treatment.  In establishing this element, the plaintiff must show that the comparable employees are similarly situated "*in all*

---

[12] As noted above, Brown cannot amend deficiencies in his amended complaint by including additional facts in his response brief.  *See Medquest Assocs.*, 702 F.Supp.2d at 918.

[13] AFS contends that Brown's assertion that the security clearance was not necessary to perform his job is contradicted by the part of the job description that states "the ability to obtain military security clearance may be necessary for the position," implying he was not qualified.  [R. 19 at 6 (citing R. 14, ¶ 17).]  On the contrary, however, the statement that the clearance *may* be necessary at least implies it would not be part of the "minimum objective criteria required," *Wexler*, 317 F.3d at 575-76, and, according to Brown, the job description also "did not call for a particular level of security clearance."  [R. 14, ¶ 78.]  In this context, the Court must accept all factual allegations as true and construe all reasonable inferences in Brown's favor, and in doing so finds he has sufficiently pled that he was objectively qualified for the position.

respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citations omitted). While Brown is correct that this standard is not necessarily construed by courts to require an exact comparison between the plaintiff and other employees "in every single aspect of their employment," *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir. 1998), at the very least Brown still must allege that all the "*relevant* aspects of his employment situation are 'nearly identical' to those of [the non-minority] employees who he alleges were treated more favorably." *Pierce v. Commonwealth Life Ins. Co*., 40 F.3d 796, 802 (6th Cir. 1994) (quoting other sources).[14]

    Here, Brown contends that Barbara Conley is a similarly-situated employee who, as a Caucasian female, was treated more favorably in that she was not terminated despite not receiving a military security clearance.[15]  [R. 14, ¶¶ 67-73.]  According to Brown, he and Ms. Conley were similarly situated because they were subject to the same standards regarding their background checks.  [R. 18 at 10.]  Even if Brown and Conley underwent the same background checks, however, it appears they were not similarly situated "in all relevant aspects" of their

---

[14] The Court further notes that although the court in *Ercegovich* made this qualifying statement about the standard expressed in *Mitchell*, it did so in the context of an age discrimination case that did not involve disciplinary actions or termination.  *See Ercegovich*, 154 F.3d at 352.  However, the *Ercegovich* court specifically distinguished the standard in *Pierce* which clearly stated that the "nearly identical" standard applies "for the purpose of creating an inference of disparate treatment in a Title VII case," such as Brown's.  *Pierce*, 40 F.3d at 802 (citations omitted).

[15] As explained above, the Court will not consider the additional documents attached to Brown's response brief because this motion is best resolved under Rule 12(b)(6).  The additional factual allegations in Brown's response brief also cannot be used to correct any deficiencies in the complaint.  Therefore, the Court's analysis is limited solely to the allegations in the pleadings.

employment.  First, Ms. Conley was employed as an Alcohol and Drug Control Officer (ADCO), which, based on the pleadings alone, is a different job title and position than Brown's with different job functions and requirements, particularly in light of Brown's allegations that Conley was his "director supervisor" and that a top secret security clearance was necessary for Ms. Conley's position but not for his.  [*Id.*, ¶¶ 67, 70.]  Second, Brown alleges, without more, that Ms. Conley "still does not have top secret clearance," despite its necessity to her position.  [*Id.*, ¶ 70.]  There is nothing in the record, however, to support this allegation, or to explain the reasons for her not having the clearance.  Moreover, although Brown alleges that he and Conley applied for their military clearances on the same day, the amended complaint does not state they were subject to the same background check requirements, or that they needed the same kind of clearance for their different positions.  [*See id.*, ¶¶ 70-77.]

Even more importantly, Brown does not allege that he and Conley were treated differently with respect to their criminal history.  [*Id.*, ¶¶ 67-73.]  Brown must allege facts that, "at a minimum," show "that for the same or similar conduct he was treated differently than similarly-situated non-minority employees."  *Mitchell*, 964 F.2d at 583.  Brown, however, has not alleged that Conley had a criminal history of any kind, let alone one that was similar to his own.  Thus, Brown's supposition that Conley remained employed despite not meeting a requirement of her position is not only speculative, but also possibly irrelevant since he has not first shown that they were similarly situated.  Moreover, although Brown asserts, without more, that Conley stated "her background investigation application had been canceled," Brown's amended complaint does not explain what that means, nor does it allege facts concerning why it was canceled, nor does it allege facts supporting the supposition that AFS had anything to do with the application being canceled.  [*Id.*]  Even when construing the allegations in the light most

15

favorable to Brown, the Court need not accept as true conclusory, unwarranted factual inferences. *Twombly*, 550 U.S. at 555.

Thus, Brown has not pled sufficient facts from which the Court could infer that the relevant aspects of his employment situation were "nearly identical" to Conley's. *See Ercegovich*, 154 F.3d at 352; *Pierce*, 40 F.3d at 802; *see also Tyler v. Univ. of Louisville*, 2008 WL 544459 *6 (W.D. Ky. Feb. 27, 2008) (finding plaintiff failed to establish a prima facie case of discrimination because plaintiff did not adequately show he was treated less favorably than a similarly situated employee in light of the standard that "[t]he similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances") (quoting *Pierce*, 40 F.3d at 802). Indeed, if the employment situation involves "[d]ifferent employment decisions, concerning different employees, made by different supervisors," such differences "sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination." *Hord v. Quebecor World, Inc.*, 2007 WL 290199, * 3-4 (Ky. Ct. App. Feb. 2, 2007) (quoting *Snipes v. Illinois Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002)). From the facts alleged, it appears that Conley's and Brown's situations were too different to compare for purposes of a discrimination claim. "Absent proof that other employees were similarly situated it is not possible to raise an inference of discrimination." *Nickell v. Memphis Light, Gas & Water Div.*, 16 F. App'x 401, 402 (6th Cir. 2001) (quoting *Shah v. General Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987)); *see also Reynolds v. Humko Prods.*, 756 F.2d 469, 472 (6th Cir. 1985) (affirming district court's determination that plaintiff failed to establish a prima facie case of disparate treatment when no similarly situated employees "committed offenses of the same magnitude" and were "subject to less discipline").

Even apart from such deficiencies, however, an essential requirement for disparate treatment claims is that "the plaintiff must establish that the adverse employment action was motivated, in part, by the plaintiff's protected-group status.  Absent a discriminatory basis, an employer does not violate Title VII, even though the discharge may have been arbitrary, unfair, or for no reason at all." *Lewis-Smith v. Western Ky. Univ.*, 85 F.Supp.3d 885, 897 (W.D. Ky. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993)).  Even when a plaintiff does not adequately show that a similarly-situated non-protected employee was treated better, "[a]lternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive" in order to establish a prima facie case.  *Lewis-Smith*, 85 F.Supp.3d at 900 (internal citation and quotation marks omitted); *see also Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) ("[Race]-related comments referring directly to the worker may support an inference of [race] discrimination."), *cert. denied* 510 U.S. 861 (1993).  For instance, the United States Supreme Court has "noted that a prima facie case of racially disparate or discriminatory treatment under Title VII may be established by demonstrating that the management individual responsible for the questioned conduct has 'made numerous derogatory comments about blacks in general and [the plaintiff] in particular,' while pursuing the seemingly inequitable behavior." *Kirkwood v. Courier-Journal*, 858 S.W.2d 194, 198 (Ky. Ct. App. 1993) (quoting *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 713, n.2 (1983)).

Therefore, the most damaging aspect of Brown's claim is the complete lack of factual allegations that would raise any possible inference that his termination was due to his race rather than his criminal history background, or even some entirely different reason.  Even if AFS employees lied to Brown about his background check, the amended complaint is devoid of any allegations that any AFS recruiter, supervisor, or employee made any racist comments, or acted

17

in a manner implying racial animus, or that anything about his termination was connected to his race. In other words, Brown has presented "no evidence from which an inference of illegal motivation may be drawn." *Robinson v. Gen. Elec. Co*., 1992 WL 295233, *4 (E.D. Ky. July 10, 1992); *see also Bowers v. State Farm Ins. Co*., 2011 WL 304578, *9 (W.D. Ky. Jan. 25, 2011) (explaining that although "[t]he proof required for a prima facie case may differ from case to case … [t]he plaintiff must at least establish an inference of discrimination") (internal citations omitted). Overall, Brown's largely unsupported allegations, devoid of context, simply "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Finally, Brown makes much of how *Iqbal* and *Twombly* have reduced federal pleading standards, arguing that he is not required to *prove* a prima facie case of discrimination at this point. [R. 18 at 10-13.] The Sixth Circuit, however, has explained the revised notice pleading standards as follows:

> [t]he Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), that to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain (1) "enough facts to state a claim to relief that is plausible;" (2) more than "a formulaic recitation of a cause of actions' elements;" and (3) allegations that suggest a "right to relief above a speculative level." (internal citation omitted) . . . . Although Rule 8 does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009). For a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. (internal citation omitted) Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Estate of Smith ex rel. Richardson v. United States*, 509 F. App'x 436, 439 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 681; Fed. R .Civ. P. 8(a)(2)). Thus, Brown is correct that he does not have to *prove* all the elements of his case at this stage of litigation. However, he must provide more than "[c]onclusory assertions. . . that defendants engaged in . . . unlawful behavior." *Ogle v. Columbia Gas Transmission, LLC*, 513 F. App'x 520, 522-23 (6th Cir. 2013). As explained

above, Brown's amended complaint does not contain enough facts to make out a plausible claim for relief.  Brown's allegations do not even provide a formulaic recitation of the requisite cause of action, let alone actually support a prima facie case.  In particular, Brown does not allege enough facts to suggest that anyone at AFS was motivated by racial animus toward him or that his termination was in any way connected to racial discrimination.[16]  Brown's mere assertions of discrimination are unwarranted inferences that do not raise his right to relief above mere speculation, and therefore his claim of racial discrimination must be dismissed.  *See Twombly*, 550 U.S. at 561-64; *see also Thompson v. AK Steep Corp*., 2015 WL 7734080 *3-4 (E.D. Ky. Nov. 30, 2015) (dismissing Title VII discrimination claims because complaint failed to satisfy all three elements of the *Twombly* test outlined in *Richardson*, 509 F. App'x at 439).

### D

As for Brown's claim of reverse gender discrimination under Count VI, Brown must present a similar prima facie case, for which the first element is slightly modified.  Specifically, he must allege: "(1) that the Defendant is that unusual employer who discriminates against the majority; (2) that [he was] qualified for the position in question; (3) that [he] suffered an adverse employment action . . . ; and (4) that [he was] treated differently than other similarly situated employees."  *Johnson v. Metropolitan Gov. of Nashville and Davidson Cnty., Tenn*., 502 F. App'x 523, 536 (6th Cir. 2012) (citation and quotation marks omitted).  Again, although Brown need not present "detailed factual allegations," his complaint must at least allege "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that AFS discriminated against him "*because of*" his gender.

---

[16] Brown simply asserts that AFS had "racially discriminatory background verification policies" which harmed him and "have a disproportionate negative impact on racial minorities," yet there are no factual allegations whatsoever in the rest of the complaint to support those assertions.  [R. 14, ¶¶ 98-99.]  This is therefore an example of "naked assertion[s] devoid of factual enhancement" which are insufficient under *Twombly*.  550 U.S. at 557.

*Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678-79; 42

U.S.C. §2000e-2(a)(1) (emphasis added in original)).  The amended complaint, however, is

entirely devoid of facts that would allow the Court to draw any inference of gender

discrimination, and particularly does not allege facts supporting the first or fourth elements.

 First, for reverse discrimination claims, "the mere fact that an adverse employment

decision was made by a member of a [protected] minority is sufficient to establish the first prong

of the *prima facie* case."  *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).  Here,

however, the amended complaint does not establish who actually made the decision to terminate

Brown, nor does it contain sufficient facts from which the Court could infer the person

responsible was female.  Brown asserts in his responsive brief that Rachel Lovejoy and Olivia

Smith were responsible for his termination, but as explained above, Brown cannot amend the

deficiencies in his complaint by including additional facts in his response to Defendants'

motion.[17]  *See Medquest Assocs.*, 702 F.Supp.2d at 918.  Even if Brown cannot establish that the

person responsible was female, he at least must allege "that background circumstances support

the suspicion that the defendant is that unusual employer who discriminates against the

majority."  *Jefferson Cnty. v. Zaring*, 91 S.W.3d 583, 591 (Ky. 2002) (citing *Murray v.

Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)).  Brown, however, does not

allege the existence of any "background circumstances" that could possibly support the suspicion

that AFS typically discriminates against male employees.  Thus, Brown has not pled sufficient

facts to support the first prong of his reverse gender discrimination claim.

 Second, Brown's gender discrimination claim also suffers from the same deficiencies as

his racial discrimination claim because he does not plead enough facts implying that similarly

---

[17] Even if this allegation could be incorporated after the fact, it is yet another example of a conclusory assertion that fails to meet federal pleading requirements.  *Iqbal*, 556 U.S. at 678.

situated female employees were treated more favorably.  The amended complaint asserts, without more, that "AFS gave females, such as Defendant Smith, unlawful preferential treatment compared to males," but nothing in the complaint describes the nature of such treatment, how such treatment harmed Brown, or how these unidentified females were similarly situated to Brown.  [R. 14, ¶ 130.]  Brown's only support for this assertion is another conclusory statement that "AFS's waiver of Defendant Smith's background check, and the arbitrary termination of the Plaintiff's shows discriminatory intent."  [*Id.*, ¶ 131.]  Not only do these statements contradict other factual allegations in the complaint, but they also are so conclusory that the Court simply cannot reasonably infer any plausible cause of action from these assertions alone.[18]

Even if Brown intended to refer to Ms. Conley here instead of Ms. Smith, in a disparate treatment case, he must at least allege that the employee to whom he compares himself "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (internal citation omitted).  The amended complaint contains no factual allegations comparing Brown's conduct to either Ms. Conley's or Ms. Smith's conduct for purposes of gender discrimination.  Again, as explained above, although Rule 8 "does not require detailed factual allegations," it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  Because Brown's claim of reverse gender discrimination does not rise above mere accusation, it must be dismissed as well.  *See, e.g.*,

---

[18] The Court notes that one or both of these statements may contain a typographical error in that Brown possibly intended to reference Ms. Conley here instead of Ms. Smith, since there is no reference anywhere else to Ms. Smith needing a background check or having one waived.  However, even if Brown meant to reference Ms. Conley, he still has not sufficiently alleged that Ms. Conley is similarly situated to him, nor does he explain what is meant by "unlawful preferential treatment."  [R. 14, ¶ 130.]  Moreover, even if these assertions were further supported, Brown still fails to satisfy the first prong of his gender discrimination claim because referring to "Defendant AFS" without more does not sufficiently allege that a woman made the decision to terminate him.

*Downs v. Bel Brands USA, Inc.*, 2014 WL 4211199, *3 (W.D. Ky. Aug. 25, 2014) (dismissing discrimination claim because the complaint gave the court "no factual basis which would permit it to infer" that plaintiff's protected status factored into the decision to terminate him as opposed to some other legitimate reason).

**E**

"Under Kentucky law, the elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Harris v. Burger King*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (internal citation and quotation marks omitted); *see also Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 795 (W.D. Ky. 2005) (stating second and third elements slightly differently). Additionally, it is important to emphasize that there is a presumption of at-will employment in Kentucky law, meaning that generally an employee can be discharged "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 198 (Ky. 2001); *see also Lewis-Smith*, 85 F.Supp.3d at 915 ("Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will") (quoting *Miracle v. Bell Cnty. Emergency Med. Servs.*, 237 S.W.3d 555, 558 (Ky. Ct. App. 2007)). Not only has Brown failed to assert any facts that would change this presumption, but he also concedes that he was an at-will employee. [R. 18 at 18.] In Kentucky, "[a]n at-will employee can claim promissory estoppel only if [he] can show a specific promise of job security." *Harris*, 993 F. Supp. 2d at 691 (citing *DePrisco v. Delta Air Lines, Inc.*, 90 F. App'x 790, 796 (6th Cir. 2004)). Moreover, "[r]eliance on the promise must be justified." *Id.* (citations omitted).

Here, Brown alleges that AFS, through Ms. Peterson and Ms. Bocanegra, promised that his criminal history would not be a barrier to his employment. Such an assurance, however, is not a specific promise of job security that could be reasonably relied upon. In the context of at-will employment in Kentucky, a valid promissory estoppel claim requires "a promise of employment for a definite term." *Murton v. Android Industries-Bowling Green, LLC*, 2015 WL 3549817, *1 (W.D. Ky. June 4, 2015) (citation omitted). Thus, while the statements at issue may have implied that AFS would not *refuse* to hire Brown based on his criminal history, they do not promise that Brown would be employed for a definite period of time, thereby indicating job security. *See, e.g., Downs*, 2014 WL 4211199, at *5-6 (dismissing promissory estoppel claim where plaintiff alleged he was fired for conduct that management represented was permissible but "failed to allege any facts from which it could be determined that he was not an at-will employee"); *Dorger v. All-State Ins. Co.*, 2009 WL 1248989, *7-8 (E.D. Ky. May 1, 2009) (finding promissory estoppel was not a viable claim where plaintiff did not identify "any express statement" from her employer "altering the normal at-will employment relationship").[19]

Brown also has not alleged facts sufficient to establish the other necessary elements of a promissory estoppel claim. For instance, although Brown asserts that "Ms. Peterson made this promise in order to induce [him] into continuing to go through the hiring process" [R. 14, ¶ 105], it would be unreasonable to assume that AFS would promise Brown his criminal history would not prevent his employment in order to induce him to complete the required paperwork, and then

---

[19] Brown asserts that the promise element of a promissory estoppel claim "can apply to a definite or indefinite term of employment," regardless of employment-at-will situations. [R. 18 at 17.] The case upon which he relies for this assertion, however, discusses a case in which a pilot was promised future indefinite employment if he continued to work for another airline during a transition period, and in reliance on that promise turned down other employment opportunities. *See Brown v. Louisville Jefferson Cnty. Redevelopment Authority, Inc.*, 310 S.W.3d 221, 224-45 (Ky. Ct. App. 2010) (citing *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468-69 (Ky. 1999)). Because Brown does not allege facts that he was similarly promised indefinite employment in exchange for some action or forbearance, that case is inapplicable here.

go through the time and effort of training him, conducting the initial background check, giving him a computer, and employing him for several months while knowing all along that his criminal history would eventually result in his termination.

Importantly, the amended complaint also does not allege any facts showing that Brown reasonably relied on the alleged promise about his criminal background such that he detrimentally changed his position. The amended complaint simply asserts that Brown relied on "AFS's promises to his detriment" but does not say how he relied on a promise or how such reliance was detrimental. [R. 14, ¶ 106.]  Brown also simply asserts that this reliance, which is not described, "was reasonable" without saying why or how.  [*Id.*, ¶ 107.]  Such conclusory legal labels devoid of supporting facts do not meet the pleading standards of Rule 8. *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (holding that "a legal conclusion couched as a factual allegation need not be accepted as true . . . and that a recitation of the elements of the cause of action is insufficient to state a claim for relief") (internal citations and quotation marks omitted).[20]  Accordingly, the facts alleged in the amended complaint are insufficient to support a promissory estoppel claim.

### III

The Sixth Circuit has held that "broad and conclusory allegations of discrimination cannot be the basis of a complaint, and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims." *HDC, LLC*, 675 F.3d at 614.  Here, Brown fails to allege facts that would allow the Court to reasonably infer that his termination

---

[20] Although Brown attempts to remedy this deficiency by arguing in his response brief that because of AFS's assurances, he did not continue to seek other employment, as explained above, Brown cannot use his response to Defendants' motion to dismiss as a vehicle to cure deficiencies in his amended complaint. *See Medquest Assocs.*, 702 F.Supp.2d at 918. Regardless, his at-will status precludes the reasonableness of any such reliance on a promise of job security. *See McDonald v. Webasto Roof Systems*, 570 F. App'x 474, 477 (6th Cir. 2014) (citing *Jackson v. JB Hunt Transp., Inc.*, 384 S.W.3d 177, 185 (Ky. Ct. App. 2012)).

occurred as a result of his race or his gender, or that he reasonably and detrimentally relied on a promise of employment.  *See Twombly,* 550 U.S. at 556; *see also Han v. Univ. of Dayton*, 541 F. App'x 622, 626 (6th Cir. 2013) (dismissing complaint "devoid of facts that would allow the Court to draw [the] inference" that adverse employment action was a result of plaintiff's race or gender); *Downs*, 2014 WL 4211199, at *3 (W.D. Ky. Aug. 25, 2014) (dismissing claims where the allegations "only create speculation or suspicion" but "do not show entitlement to relief.").

Accordingly, it is hereby ORDERED as follows:

      1.     The Defendants' Motion to Dismiss for failure to state a claim [**R. 15**] is **GRANTED**; and

      2.     The Court will enter an appropriate Judgment contemporaneously herewith.

This the 13th day of June, 2016.

Gregory F. Van Tatenhove
United States District Judge